1

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   THOMAS A.GONDA, JR., M.D.,    )  Case No. 11-cv-01363-SC
                                  )
10           Plaintiff,           )  ORDER GRANTING MOTION FOR
                                  )  SUMMARY JUDGMENT
11      v.                        )
                                  )
12  THE PERMANENTE MEDICAL GROUP, )
    INC.; and THE PERMANENTE MEDICAL )
13  GROUP, INC. LONG TERM DISABILITY )
    PLAN FOR PHYSICIANS,          )
14                                )
             Defendants.          )
15                                )
                                  )
16                                )
    _____)
17

18

19   **I.  INTRODUCTION**

20        Now before the Court is Defendants The Permanente Medical

21   Group, Inc. ("TPMG") and The Permanent Medical Group, Inc. Long

22   Term Disability Plan for Physicians' ("TMPG Plan") motion for

23   summary judgment.  The motion is fully briefed[1] and appropriate for

24   determination without oral argument per Civil Local Rule 7-1(b).

25   For the reasons set forth below, Defendants' motion for summary

26   judgment is GRANTED.

27   _____

28   [1] ECF Nos. 67 ("Mot."), 71 ("Opp'n"), 80 ("Reply").

**United States District Court**
For the Northern District of California

## II. **BACKGROUND**

Plaintiff Thomas A. Gonda, Jr. worked as a thoracic surgeon for Defendant TPMG at the Kaiser Foundation Hospitals ("Kaiser") until 2006.  Mot. at 2-3; Opp'n at 1; ECF No. 49 ("Johnston Decl. I") Ex. A at LINA-GON 1652-53.  In July of 2003, Dr. Gonda was hit by a car while riding a Segway to a kite festival.  Opp'n at 6; ECF No. 73 ("Johnston Decl. II") Ex. A at LINA-GON 945, 1582.  Though he began experiencing double vision, Dr. Gonda returned to work and performed heart surgery with one eye closed.  Opp'n at 2; Johnston Decl. II Ex. A at 1582.  Over the next few months, Dr. Gonda experienced headaches, memory loss, and difficulty focusing on and completing tasks.  Id. at LINA-GON 1582.  On September 7, 2003, Dr. Gonda underwent surgery to evacuate subdural hematomas.  Johnston Decl. II Ex. B at PsyBar 75-76.

Dr. Gonda continued to have episodes of confusion over the next several years, during which he also struggled with substance abuse.  In late October 2006, "he was driving, got lost, and couldn't organize his circumstances and numbers."  Johnston Decl. II Ex. B. at PsyBar 67.  The next day, his colleagues thought something was wrong while he was assisting with a surgery and took him to the emergency room.  Id.

Dr. Gonda has had problems with alcohol abuse for over twenty years, and he has prescribed codeine for himself to deal with hand pain.  Johnston Decl. I Ex. A at LINA-GON 1652-53.  Dr. Gonda's alcohol abuse problems intensified following his head injury.  Id.  On December 21, 2006, Dr. Gonda slept through his first scheduled morning surgery as a result of alcohol and drug use.  Upon his arrival at the hospital, he appeared confused.  His coworkers took

**United States District Court**
For the Northern District of California

1   him to the emergency room, where his blood work revealed opioids

2   and benzodiazepines in his system and a blood alcohol level of .21.

3   Johnston Decl. II Ex. B at PsyBar 59.  Dr. Gonda entered a

4   residential substance abuse treatment program and applied for long

5   term disability ("LTD") benefits through the TPMG Plan.  Johnston

6   Decl. I Ex. A at LINA-GON 1653; ECF No. 67-9 ("Downey Decl.") ¶ 3.

7   After completing the program in 2007, Dr. Gonda wished to return to

8   work at TPMG as a surgeon, but TPMG and Kaiser refused and

9   terminated his employment.  Mot. at 3; Opp'n at 2.

10      Dr. Gonda received benefits under the TPMG Plan from June 21,

11  2007 through October 7, 2010.  Downey Decl. ¶ 3.  Following

12  completion of his substance abuse treatment program, Dr. Gonda

13  returned to school to become certified as a California Addictions

14  Counselor.  Downey Decl. Ex. D at LINA-GON 1158.  On October 11,

15  2010, the Life Insurance Company of North America ("LINA"), which

16  provided LTD insurance coverage for the TPMG Plan, informed Dr.

17  Gonda it would no longer pay LTD benefits.  Id. ¶¶ 2-3.  Dr. Gonda

18  twice appealed the denial of his LTD benefits claim, but LINA

19  denied both appeals (on January 22, 2013 and May 31, 2013).  Id. ¶

20  3.

21      In December 2010, Dr. Gonda filed wrongful termination

22  lawsuits against Kaiser and TPMG in state court, which were

23  consolidated in arbitration.  On March 22, 2011, Dr. Gonda filed

24  the instant action, which brings claims under the Employee

25  Retirement Income Security Act of 1974 ("ERISA") and for breach of

26  fiduciary duty.  ECF No. 1; ERISA is codified at 29 U.S.C. § 1001

27  et seq.  In November 2011, Dr. Gonda settled his arbitrations with

28  TPMG and Kaiser.  ECF No. 67 ("Higbee Decl.") Ex. D ("Settlement

3

1  Agreement").  The Settlement Agreement specified that

> DR. GONDA and his agents, successors and assigns agree to release and forever discharge TPMG, KFH, Kaiser Foundation Health Plan, Inc., and each of their directors, officers, physicians, managers, attorneys, supervisors, employers, agents, successors, assigns, representatives, shareholders, parents, subsidiaries, related companies and facilities, past and present, and each of them, in their representative capacity and as individuals (collectively "RELEASED PARTIES"), of and from any and all claims, charges, demands, actions, obligations, liabilities, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, which DR. GONDA now owns or holds or has at any time owned or held arising under, concerning or related to his employment by TPMG and Kaiser Foundation Health Plan credentials or his staff privileges at KFH whether based on tort, contract (implied, express or otherwise), common law, or any federal, state or local law, statute, ordinance or regulation, including, without limitation, all rights conferred upon Dr. Gonda pursuant to the California Business & Professions Code, the California Health & Safety Code, the California Fair Employment & Housing Act, the California Family Rights Act, the California Labor Code, the California Constitution, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Rehabilitation Act of 1973, the Equal Pay Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act, and Section 1981 of Title 42 of the United States Code, all as amended, including all claims for attorney fees incident thereto (collectively "RELEASED CLAIMS").

19  Settlement Agreement ¶ 1.

20      Defendants now move for summary judgment on the grounds that

21  the Settlement Agreement bars all of Dr. Gonda's claims.  Dr. Gonda

22  opposes.

**III.  LEGAL STANDARD**

**A.   Summary Judgment**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

4

**United States District Court**
For the Northern District of California

1  56(a).  Summary judgment should be granted if the evidence would

2  require a directed verdict for the moving party.  <u>Anderson v.</u>

3  <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).  "A moving party

4  without the ultimate burden of persuasion at trial -- usually, but

5  not always, a defendant -- has both the initial burden of

6  production and the ultimate burden of persuasion on a motion for

7  summary judgment."  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz</u>

8  <u>Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

9       "In order to carry its burden of production, the moving party

10  must either produce evidence negating an essential element of the

11  nonmoving party's claim or defense or show that the nonmoving party

12  does not have enough evidence of an essential element to carry its

13  ultimate burden of persuasion at trial."  <u>Id</u>.  "In order to carry

14  its ultimate burden of persuasion on the motion, the moving party

15  must persuade the court that there is no genuine issue of material

16  fact."  <u>Id</u>.  "The evidence of the nonmovant is to be believed, and

17  all justifiable inferences are to be drawn in his favor."

18  <u>Anderson</u>, 477 U.S. at 255.

19       **B.    Waiver of ERISA Benefits**

20       When determining whether an employee has waived his ERISA

21  benefits, "courts are obligated to scrutinize an ostensible waiver

22  with care in order to ensure that it reflects the purposeful

23  relinquishment of an employee's rights."  <u>Morais v. Cent. Beverage</u>

24  <u>Corp. Union Emps.' Supplemental Ret. Plan</u>, 167 F.3d 709, 713 (1st

25  Cir. 1999) (internal quotation marks omitted); <u>see also</u> <u>Purney v.</u>

26  <u>Reliastar Life Ins. Co.</u>, 681 F. Supp. 2d 1262, 1268 (D. Nev. 2010)

27  (summarizing status of ERISA waiver defense in the circuit courts).

28  A waiver of ERISA benefits must be knowing and voluntary.  The

court must examine the totality of the circumstances to determine whether the waiver was made knowingly and voluntarily, but the Second Circuit has developed a widely used six-factor test to guide courts in that decision.  <u>Morais</u>, 167 F.3d at 712-13.  Those six factors are:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

<u>Finz v. Schlesinger</u>, 957 F.2d 78, 82 (2d Cir. 1992); <u>see also</u> <u>Upadhyay v. Aetna Life Ins. Co.</u> (<u>Upadhyay I</u>), No. C 13-1368 SI, 2014 WL 186709, at *4 (N.D. Cal. Jan. 16, 2014) (applying <u>Finz</u> test).

**IV.  DISCUSSION**

The only issue before the Court is whether the Settlement Agreement bars Dr. Gonda's claims against TPMG and the TPMG Plan. The Settlement Agreement specifically releases TPMG and its agents from any claims which Dr. Gonda held (or had previously held), and it specifically mentions ERISA claims.  Settlement Agreement ¶ 1. Dr. Gonda argues that Defendants' motion should be denied for five reasons: (1) Defendants untimely raise an affirmative defense; (2) the Settlement Agreement is superseded by TPMG's agreements to proceed with Dr. Gonda's LINA appeals; (3) Defendants are estopped from arguing that the Settlement Agreement bars the claims; (4) the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

parties did not intend the Settlement Agreement to bar Dr. Gonda's claims in this action; and (5) the motion for summary judgment is premature.  The Court begins by determining whether consideration of the Settlement Agreement is appropriate at all.  Then the Court proceeds to apply the Finz factors to determine whether Dr. Gonda's waiver of his ERISA claims was knowing and voluntary.  Finally, the Court addresses Dr. Gonda's additional arguments.

### A.   Untimely Affirmative Defense

Dr. Gonda first argues that Defendants attempt to raise an untimely affirmative defense.  The Court agreed, but permitted Defendants to amend their answer to add the proper affirmative defense.  See ECF No. 94.  Defendants filed their amended answer on February 10, 2015, and it now adequately pleads the appropriate affirmative defense.  ECF No. 96 ("Amended Answer") ¶¶ 33-34.

### B.   Supersession of the Settlement Agreement

Dr. Gonda next argues that the Settlement Agreement has been superseded by agreements that are later in time and more specific than the release contained in the Settlement agreement.  According to Dr. Gonda, LINA's willingness to consider Dr. Gonda's appeals constituted a superseding agreement that his ERISA claims had not been released.  The subsequent agreements Dr. Gonda cites are the stipulations to stay this matter pending the outcome of Dr. Gonda's LINA appeals.  See Opp'n at 16.  This argument is problematic for a number of reasons.

First, courts in this District have held that a right to ERISA benefits and a right to bring an ERISA action in federal court are distinct: "Under the terms of the settlement agreement, plaintiff not only waived [his] right to benefits under the Plan, [he] also

waived [his] right to bring an ERISA action in federal court."
Upadhyay I, 2014 WL 186709, at *2.  Thus the Court in Upadhyay held
that even though the settlement agreement "could have served as a
basis for denying benefits during the administrative process," the
administrator's failure to rely on the agreement did not constitute
waiver of the affirmative defense for the purposes of the federal
lawsuit.  The same is true here; LINA's decision not to use the
Settlement Agreement as a basis for denying benefits during Dr.
Gonda's administrative appeals does not preclude assertion of the
Settlement Agreement as an affirmative defense in this action.

Second, it is unclear how LINA's willingness to hear Dr.
Gonda's internal appeals could affect TPMG or the TPMG Plan's
contractual rights under the Settlement Agreement.  LINA is not a
party to this lawsuit, and it was not a party to the Settlement
Agreement.  Dr. Gonda cites no authority for the proposition that a
non-party (or even a party, for that matter) to a contract can
waive another party's rights.

Third, even if TPMG (rather than LINA) had agreed to allow
administrative appeals of Dr. Gonda's claims, that would not have
constituted waiver of the release in the Settlement Agreement.
Willingness to continue internal administrative appeals does not
equate to a waiver of Defendants' contractual right to be released
from Dr. Gonda's claims against them.  Indeed, there is case law
from this District almost directly on point.  In Upadhyay, as in
this case, the plaintiff settled a wrongful termination lawsuit
with her employer in state court.  Upadhyay v. Aetna Life Ins. Co.
(Upadhyay II), No. C 13-01368 SI, 2014 WL 883456, at *1 (N.D. Cal.
Mar. 3, 2014).  The settlement agreement included a general release

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

of claims.  The plaintiff then applied for long-term disability benefits under a policy issued by the defendant, Aetna, to the plaintiff's employer, Symmetricom.  Aetna denied the claim and the plaintiff's internal appeal.  Id.  In denying the appeal, Aetna sent the plaintiff a letter informing the plaintiff that she had a right to bring a civil action under ERISA.  Id. at *4.  The plaintiff argued that that statement constituted waiver of the affirmative defense of release, and that Aetna was required to inform her that it intended to raise the affirmative defense of release.  Id.  The court held that Aetna's statement did not constitute wavier, and that Aenta was not required "to disclose what affirmative defenses it may assert if plaintiff brings an ERISA action against it in federal court."  Id. at *5.

Similarly, neither LINA's willingness to consider Dr. Gonda's appeals nor Defendants' agreement to stay this case during those appeals constituted waiver of an affirmative defense.  LINA's completion of the administrative appeals did not affect Defendants' rights under the Settlement Agreement.  Even if LINA had advised Dr. Gonda of his cause of action under ERISA, that more explicit recognition of his claim would not have limited the affirmative defenses that Defendants could assert in this case.  Thus the Court finds that none of Defendants' actions or communications constitute an agreement that supersedes the Settlement Agreement.

   **C.   Estoppel**

Dr. Gonda next argues that Defendants are barred from raising the Settlement Agreement as a defense by equitable, promissory, and judicial estoppel.  The equitable and promissory estoppel arguments are premised on the notion that Defendants represented to Dr. Gonda

**United States District Court**
For the Northern District of California

1  that they would not raise the Settlement Agreement as an

2  affirmative defense by agreeing to hear Dr. Gonda's appeals.  <u>See</u>

3  Opp'n at 17-20.  For the reasons discussed previously, agreement to

4  hear Dr. Gonda's administrative appeals was not a representation

5  that Defendants would not raise the Settlement Agreement as an

6  affirmative defense in court.  The judicial estoppel argument is

7  premised on the notion that Defendants have "represented to this

8  Court for years that Dr. Gonda's disability claim was viable and

9  was the subject of ongoing internal-appeal proceedings . . . ."

10 <u>Id.</u> at 19.  The second part of that statement -- that Defendants

11 represented that Dr. Gonda's claim was the subject of ongoing

12 internal-appeal proceedings -- is true.  The first -- that

13 Defendants indicated that his claim was viable -- is not.  By

14 allowing Dr. Gonda to pursue his internal appeals, Defendants did

15 not admit that he had a viable cause of action in court.  Nor did

16 Defendants surrender their contractual right to be released from

17 all ERISA causes of action that Dr. Gonda held against them.

18        **D.   <u>Application of the Settlement Agreement</u>**

19      The previous three arguments -- untimely affirmative defense,

20 supersession, and estoppel -- were all arguments which, if

21 successful, would have prevented the Court from considering the

22 Settlement Agreement's application to the claims in this case.

23 Because the Court rejects each of those arguments, the Court now

24 turns to the question of whether the Settlement Agreement releases

25 Dr. Gonda's causes of action in this case.

26        **1.   <u>Knowing and Voluntary Waiver</u>**

27      Waiver of ERISA benefits must be knowing and voluntary.

28 Courts consider the totality of the circumstances in determining

United States District Court
For the Northern District of California

whether a release was knowing and voluntary, but the <u>Finz</u> factors provide some guidance.  In this case, the plaintiff is highly educated: he has a medical doctorate and practiced for years as a thoracic surgeon.  Dr. Gonda acknowledged in the Settlement Agreement that he had a period of at least 21 days to consider the agreement and that he had been advised in writing to consult an attorney before signing it.  Settlement Agreement ¶¶ 10(b), 10(e). In fact, Dr. Gonda was represented by counsel who fully explained the Settlement Agreement to him, and Dr. Gonda acknowledged his understanding of the agreement and its implications.  <u>Id.</u> at 8. Additionally, the parties agreed that the consideration paid to Dr. Gonda was "compensation for alleged losses, injuries, legal, and medical expenses," and Dr. Gonda "acknowledge[d] and agree[d] that he would not be entitled to receive the Settlement Sum if he did not make the promises that he is making in this Agreement."  <u>Id.</u> ¶¶ 4(a), 19.

The Settlement Agreement also clearly and unambiguously released all of Dr. Gonda's ERISA claims against TPMG and related parties.  Dr. Gonda agreed to release "all . . . causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, which DR. GONDA now owns or holds or has at any time owned or held . . . based on . . . any federal . . . statute . . . including, without limitation, all rights conferred upon Dr. Gonda pursuant to . . . the Employee Retirement Income Security Act . . . ."  <u>Id.</u> ¶ 1.  That language explicitly releases Dr. Gonda's ERISA claims against Defendants.  Like other ERISA waivers that courts have upheld, the Settlement Agreement specifically mentioned ERISA.  It also exempted certain benefits and claims --

specifically, Dr. Gonda's retirement benefits and potential California COBRA coverage -- but did not exempt any ERISA claims. Id. ¶¶ 5, 20.  That is powerful evidence that the parties did intend to release all of Dr. Gonda's ERISA claims.  See Parisi v. Kaiser Found. Health Plan Long Term Disability Plan, No. C 06-04359 JSW, 2008 WL 220101, at *2 (N.D. Cal. Jan. 25, 2008) (release exempted vested retirement and COBRA benefits, but not ERISA benefits); Bennett v. CNA Ins. Cos., No. C-99-03127 EDL, 2001 WL 30533, at *5 (N.D. Cal. Jan. 5, 2001) (release exempted vested pension benefits, but not disability benefits).

    The Court finds, therefore, that on its face the Settlement Agreement constitutes a knowing and voluntary waiver of Dr. Gonda's ERISA claims against Defendants.  However, Dr. Gonda argues for a number of reasons that the Settlement Agreement does not release the claims he brings in this lawsuit.

## 2.   Parties' Conduct During and After Settlement Negotiations

    Dr. Gonda makes two related arguments about the parties' conduct.  First, he points out that Defendants did not seek dismissal of this action when the Settlement Agreement was signed but instead waited three years to raise the issue while Dr. Gonda's internal appeals were pending.  The Court has recognized that Defendants' behavior was not what one would expect of parties that have been released.  See ECF Nos. 84 at 3, 94 at 3-4.  Second, Dr. Gonda points out his long-term disability benefits claim "was never even mentioned during the wrongful-termination settlement negotiations."  Opp'n at 21.  Defendants respond that because the Settlement Agreement is an unambiguous integrated contract,

extrinsic evidence cannot be used to contradict its terms.

### i.  Governing Law

The Court notes at the outset that there is a question as to which law governs the interpretation of the Settlement Agreement. The parties assume that California law governs because the Settlement Agreement specifies that California law applies.  See Settlement Agreement ¶ 23 ("This Agreement is made and entered into in the State of California and shall in all respects be enforced and governed by California law.").  However, a number of courts have held that federal common law preempts state law when interpreting a waiver of ERISA claims.  See Shaver v. Siemens Corp., 670 F.3d 462, 497 n.28 (3d Cir. 2012) ("[A] contract that potentially affects rights protected by [ERISA] . . . is likely subject to interpretation in accordance with tenets of federal common law.") (internal quotation marks omitted); Morais, 167 F.3d at 711 ("It is well settled that federal common law applies both to interpret the provisions of an ERISA benefit plan and to resolve '[i]ssues of relinquishment of rights and waiver' when such side agreements affect the benefits provided by an ERISA plan."); Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002) ("Federal common law controls the interpretation of a release of federal claims."); see also Bd. of Trustees of Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc., 97 F.3d 1479, 1486-87 (D.C. Cir. 1996) ("Thus, even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered  by ERISA, will nonetheless be preempted insofar they affect ERISA-protected rights.").

The Ninth Circuit has held that federal common law applies to

**United States District Court**
For the Northern District of California

1   the interpretation of ERISA policies but has not explicitly

2   extended that holding to separate contracts that waive ERISA

3   claims.  See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439

4   (9th Cir. 1990) ("[W]e hold that the interpretation of ERISA

5   insurance policies is governed by a uniform federal common law.").

6   However, the Ninth Circuit has also held that "[t]he interpretation

7   of a settlement agreement is governed by principles of state

8   contract law.  This is so even where a federal cause of action is

9   'settled' or 'released.'"  Botefur v. City of Eagle Point, Or., 7

10  F.3d 152, 156 (9th Cir. 1993).

11      There are compelling reasons to believe that the Ninth

12  Circuit's general statement about the release of federal causes of

13  action in Botefur might not apply to releases of ERISA claims.

14  First, the Ninth Circuit has recognized that "ERISA contains one of

15  the broadest preemption clauses ever enacted by Congress." Evans,

16  916 F.2d at 1439.  Second the Ninth Circuit "agree[s] with the

17  conclusion of the First Circuit . . . that the interpretation of an

18  ERISA insurance policy is 'governed by a uniform body of federal

19  law.'"  Id. at 1441.  Third, the legislative history that the Ninth

20  Circuit chronicled in Evans suggests that uniform principles for

21  interpreting ERISA waivers would further Congress's purpose.  See

22  id. at 1440 ("ERISA's legislative history, discussed in a plethora

23  of ERISA preemption decisions, undeniably demonstrates that

24  Congress expects uniformity of decisions under ERISA.").  Fourth,

25  courts in the Ninth Circuit have consistently applied the Finz

26  factors -- which are derived from federal common law -- to waivers

27  of ERISA claims.  See, e.g., Rombeiro v. Unum Ins. Co. of Am., 761

28  F. Supp. 2d 862, 869 (N.D. Cal. 2010); Upadhyay I, 2014 WL 186709,

14

at *4; <u>Parisi</u>, 2008 WL 220101, at *4; <u>Bennett</u>, 2001 WL 30533, at *5 (N.D. Cal. Jan. 5, 2001).

Two district courts in the Ninth Circuit have held that federal common law applies to the interpretation of ERISA waivers. <u>See</u> <u>Mull v. Motion Picture Indus. Health Plan</u>, No. CV 12-06693-VBF-MAN, 2014 WL 1514812, at *10 n.8 (C.D. Cal. Feb. 4, 2014) ("[T]he issue of whether a party in a federal lawsuit has waived its right to bring a cause of action under a federal statute is governed by federal law. . . . [T]his principle has properly been applied to the determination of whether a party has validly waived a right conferred by ERISA."); <u>Zhu v. Fujitsu Grp. 401(K) Plan</u>, No. C-03-1148RMW, 2004 WL 3252573, at *3 (N.D. Cal. Mar. 3, 2004) ("Federal common law applies to interpret the provisions of an ERISA benefit plan and to resolve issues of relinquishment of rights and waiver when such side agreements affect the benefits provided by an ERISA plan.") (internal quotation marks omitted) (citing <u>Morias</u>, 167 F.3d at 711).

One court has even wrestled with the issue of whether a choice of law provision in an ERISA waiver can override the default application of federal common law. <u>See</u> <u>Bd. of Trustees v. Valley Util. Servs., Inc.</u>, No. C-13-0271 EMC, 2013 WL 5817722, at *2 (N.D. Cal. Oct. 29, 2013) ("[T]here are a number of cases holding that federal common law governs the enforceability of a settlement agreement which settles ERISA claims. . . . Here, the issue is further complicated because the parties agreed that the '[Settlement] Agreement shall be governed by, interpreted and construed in accordance with the laws of the State of California.'"). The <u>Valley Utility</u> Court pointed out that the

United States District Court
For the Northern District of California

Ninth Circuit has held that "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair."  Wang Labs., Inc. v. Kagan, 990 F.2d 1126, 1128-29 (9th Cir. 1993).[2]

Some courts in this District have concluded rather perfunctorily that releases of ERISA claims are integrated contracts and therefore rejected extrinsic evidence.  They have done so without specifying whether California or federal common law applies.[3]  See Upadhyay I, 2014 WL 186709, at *5 ("because the settlement agreement is an integrated contract and its terms are unambiguous, extrinsic evidence cannot be used to contradict the express terms of the release"); Parisi, 2008 WL 220101, at *3 ("The Court also finds that the Release is integrated and unambiguous, so no extrinsic evidence is permitted."); Bennett, 2001 WL 30533, at *4 ("The Settlement is integrated and unambiguous, so no extrinsic evidence is permitted.").

The Court finds that California law governs the Settlement Agreement, including the ERISA waiver.  This Court is bound by the

---

[2] One district court has suggested that Wang was limited to the context of applying a state's statute of limitations.  Hawthorne v. Zurich Am. Ins. Co., No. CV06-0374RSL, 2007 WL 1795319, at *5 (W.D. Wash. June 18, 2007) ("Wang, however, involved the question of whether a choice of law provision could be looked to in deciding which state's statute of limitations law would be applied.").  The Ninth Circuit has since clarified that Wang applies more broadly.  See Fenberg v. Cowden Auto. Long Term Disability Plan, 259 F. App'x 958, 959 (9th Cir. 2007) (applying Wang to determine standard of review for benefits denial).

[3] In fact, the plaintiff in Upadhyay made essentially the same argument as Dr. Gonda: that the failure to mention long-term disability benefits during settlement negotiations evinced an intention not to release ERISA claims.  See Upadhyay I, 2014 WL 186709, at *5.  The court rejected that argument because the release was integrated and unambiguous.  Id.

**United States District Court**
For the Northern District of California

1  Ninth Circuit's holding in <u>Wang</u> and must give force to the parties'

2  choice of law provision.  Because both Defendants and Dr. Gonda

3  agree that California law applies, its application is clearly not

4  unreasonable or unfair.  However, as discussed briefly below, the

5  Court would reach the same conclusion regardless of the law that

6  applies.

7                    **ii.  <u>Application</u>**

8       In this case, the most compelling extrinsic evidence in Dr.

9  Gonda's favor is the subsequent conduct of the parties.  That type

10 of evidence is specifically allowed by California law in some

11 circumstances, so a deeper examination of its admissibility is

12 warranted in this case.  California law acknowledges the relevance

13 of the parties' acts and conduct to the interpretation of a

14 contract.  <u>See</u> Cal. Civ. Proc. Code § 1856 ("The terms set forth in

15 a writing described in subdivision (a) may be explained or

16 supplemented by course of dealing or usage of trade or by course of

17 performance."); <u>U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.</u>, 281

18 F.3d 929, 937 (9th Cir. 2002) ("Under California law, a court may

19 consider the subsequent acts and conduct of the parties in the

20 execution of the contract in order to determine the intent of those

21 parties.").

22      The contract at issue in this case contains an integration

23 clause.  <u>See</u> Settlement Agreement ¶ 26 ("This Agreement sets forth

24 the entire understanding and agreement between the parties with

25 respect to the subject matters herein and supersedes any prior or

26 contemporaneous oral and/or written agreements, promises,

27 inducements, or representations, if any, between the parties.").

28 "Where, as here, the contract at issue is fully integrated,

California law allows the admission of parol evidence only if it is (1) 'relevant' to prove (2) 'a meaning to which the language of the instrument is reasonably susceptible.'" U.S. Cellular, 281 F.3d at 938.  The Court must consider the proposed extrinsic evidence before determining whether the Settlement Agreement is reasonably susceptible to multiple interpretations.  See Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 39-40 (Cal. 1968) ("[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties.").[4]

After considering the extrinsic evidence that Dr. Gonda has offered, the Court finds that there is no meaning to which the language of the Settlement Agreement is reasonably susceptible that permits Dr. Gonda's claims.  The Settlement Agreement unequivocally and unambiguously releases TPMG from all of Dr. Gonda's ERISA's claims.  In his twenty-five page opposition brief, Dr. Gonda does not propose any such reasonable meaning -- he never discusses the language of the Settlement Agreement at all.  Dr. Gonda released "any and all claims, charges, demands, actions, obligations, liabilities, and causes of action of whatever kind or nature,

---

[4] It is important to recognize that Dr. Gonda never proposes an alternate interpretation of the contract.  He argues that the parties never intended the Settlement Agreement to release the ERISA claims he brings in this action, but never proposes any interpretation of the contractual language consistent with that argument.  California courts have held that extrinsic evidence must be considered to determine whether "the language of a contract, in the light of all the circumstances, is 'fairly susceptible of either one of the two interpretations contended for.'"  Pac. Gas & Elec., 69 Cal. 2d at 40.  Because only one interpretation of the Settlement Agreement is "contended for," the Court must guess at Dr. Gonda's favored interpretation.

18

**United States District Court**
For the Northern District of California

1   whether known or unknown, suspected or unsuspected, which DR. GONDA
2   now owns or holds or has at any time owned or held . . . ."  Even
3   knowing that Defendants waited so long to raise this defense and
4   did not mention Dr. Gonda's ERISA claims during the settlement
5   negotiations, there is simply no reasonable way to read that
6   language in a manner that permits an exception.  The language makes
7   it obvious that the parties intended to release all of Dr. Gonda's
8   claims, past or present, against Defendants.  As a result, the
9   Court need not consider the extrinsic evidence Dr. Gonda offers to
10  interpret the contract.

11      It is important to reiterate that Dr. Gonda consulted with
12  counsel during the settlement negotiations that produced the
13  Settlement Agreement.  Dr. Gonda's attorney signed a statement on
14  the Settlement Agreement attesting that he fully explained the
15  terms of the Settlement Agreement to Dr. Gonda, and that Dr. Gonda
16  acknowledged his understanding of the document and its legal
17  effect.  See Settlement Agreement at LINA-GON 1979.  Additionally,
18  Dr. Gonda admits that he had at least 21 days to consider the
19  Settlement Agreement.  Id. ¶ 10(c).  In part because of those
20  facts, the Court found that Dr. Gonda's waiver of his ERISA claims
21  against TPMG was knowing and voluntary.  The facts that Dr. Gonda
22  was represented by counsel and had ample time to consider the
23  Settlement Agreement also reinforce the Court's willingness to
24  implement the agreement's plain language.

25      The Court would reach the same result were it to apply federal
26  common law.  "The relevant federal substantive law includes the
27  common-sense canons of contract interpretation derived from state
28  law including the teaching that contracts containing unambiguous

**United States District Court**
For the Northern District of California

language must be construed according to their plain and natural meaning." Morais, 167 F.3d at 712 (internal quotations and citations omitted).  Additionally, "[a]s a general rule, a court should not consider extrinsic evidence to give meaning to a contract unless the contract's terms are vague or ambiguous. . . . In no event may extrinsic evidence be employed to contradict explicit contract language or to drain an agreement's text of all content save ink and paper." Id. at 713.

The Court has found that the waiver in the Settlement Agreement is unambiguous: it clearly waives all of Dr. Gonda's ERISA claims against the released parties.  Any reading of the contract that includes an exception for the claims Dr. Gonda brings in this case would contradict the explicit language of the Settlement Agreement.  As did the courts in Upadhyay, Parisi, and Bennett, the Court holds that Dr. Gonda may not use extrinsic evidence to contradict the terms of the Settlement Agreement. Therefore, the Settlement Agreement must be construed to mean what it says: Dr. Gonda has waived his ERISA claims against the released parties.

### 3.   Separate Consideration

Dr. Gonda also argues that waiver of his ERISA claims was unsupported by consideration.  He points out that the money he received through the Settlement Agreement was divided into two payments: one "intended to compensate Plaintiff for alleged lost wages" and another "intended to compensate Plaintiff solely for alleged emotional distress."  See Settlement Agreement ¶¶ 4(a)-(c). Because the consideration Dr. Gonda received was earmarked specifically for lost wages and emotional distress, Dr. Gonda

United States District Court
For the Northern District of California

1  argues that his waiver was unsupported by separate consideration

2  and therefore invalid.  "This argument is meritless because

3  California courts have long held that 'where the writing is plain

4  and explicit and given for the express purpose of effecting a

5  complete release of the obligation, a consideration is not

6  necessary.'"  Sheehan v. Atlanta Int'l Ins. Co., 812 F.2d 465, 470

7  (9th Cir. 1987); see also Bacon v. Stiefel Labs., Inc., No. 09-

8  21871-CV-KLNG, 2011 WL 4944122, at *7 (S.D. Fla. Oct. 17, 2011) ("A

9  number of courts . . . have held that . . . a release of ERISA

10 claims which is included as part of a general release need not be

11 separately bargained for or supported by separate consideration.").

12            **4.   Application to the TPMG Plan**

13      While the Settlement Agreement specifies TPMG as one of the

14 released parties, it does not mention the TPMG plan.  In two short

15 sentences in his opposition brief, Dr. Gonda suggests that the

16 failure to specify the TPMG Plan as a released party means that Dr.

17 Gonda did not waive his claims against the TPMG Plan.  See Opp'n at

18 5, 21.

19      It is true that the Settlement Agreement does not name the

20 TPMG Plan as a released party.  It names "TPMG, KFH, Kaiser

21 Foundation Health Plan, Inc., and each of their directors,

22 officers, physicians, managers, attorneys, supervisors, employers,

23 agents, successors, assigns, representatives, shareholders,

24 parents, subsidiaries, related companies and facilities."

25 Settlement Agreement ¶ 1.  Defendants argue that the TPMG Plan was

26 released as an agent, representative, or related company.  See Mot.

27 at 10.  Indeed, TPMG's summary of the TPMG Plan states that "[t]he

28 Plan is established and maintained by The Permanente Medical Group,

United States District Court
For the Northern District of California

1    Inc., the Plan Sponsor," and that TPMG "may terminate, suspend,

2    withdraw, or amend the Plan, in whole or in part, at any

3    time . . . ."  Downey Decl. Ex. C at LINA-GON 1856.

4         Under similar circumstances, the Eastern District of Michigan

5    found that the long-term disability benefit plan "is merely a

6    division of [the plan sponsor], not a separate entity as plaintiff

7    asserts."  Homenick v. Nat'l Steel Corp., No. 95-CV-75310-DT, 1996

8    WL 426549, at *3 (E.D. Mich. Feb. 22, 1996).  The Ninth Circuit has

9    indicated concurrence in an unpublished opinion.  In Austin v. CCC

10   Information Services, Inc. Benefit Plan, the Ninth Circuit analyzed

11   a settlement agreement releasing the plaintiff's employer, its

12   agents, and "'all persons acting under, by, through or in concert

13   with' them."  225 F. App'x 671, 672 (9th Cir. 2007).  The court

14   held that "the Plan is an entity created and administered by

15   [plaintiff's] former employer" and concluded "that the agreement's

16   broad release clause clearly bars [plaintiff's] ERISA action."  Id.

17   The same is true here.  As in Austin, the broad language of the

18   Settlement Agreement bars Dr. Gonda's ERISA action against the TPMG

19   Plan.

20        E.   Motion for Summary Judgment is Premature

21        Finally, Dr. Gonda argues that the motion for summary judgment

22   is premature.  He cites Federal Rule of Civil Procedure 56(f),

23   which permits the Court to grant summary judgment independent of

24   the motion.  See Opp'n at 23.  It appears that Dr. Gonda intended

25   to cite Rule 56(d).  Rule 56(d) permits the Court to postpone

26   ruling on a motion for summary judgment "[i]f a nonmovant shows by

27   affidavit or declaration that, for specified reasons, it cannot

28   present facts essential to justify its opposition."  To prevail

United States District Court
For the Northern District of California

under this Rule, a party opposing a motion for summary judgment must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." Emp'rs Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004).  "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  Additionally, "[t]he district court does not abuse its discretion by denying further discovery if . . . the movant fails to show how the information sought would preclude summary judgment." Cal. Union Ins. Co. v. Am. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).

Dr. Gonda has not filed an affidavit or declaration that satisfies the burden established by the Ninth Circuit.  In fact, he has filed no affidavit or declaration at all.  In support of his request, Dr. Gonda cites Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.  Dr. Gonda apparently overlooks the fact that Family Home reiterates the Employers Teamsters requirements: "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." 525 F.3d 822, 827 (9th Cir. 2008).  Additionally, Family Home held that "[f]ailure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." Id. (internal quotation marks omitted).  Thus the Court could deny Dr.

**United States District Court**
For the Northern District of California

1  Gonda's Rule 56(d) request on the ground that Dr. Gonda failed to

2  file a supporting affidavit alone.

3      The only support Dr. Gonda provides for his request is in his

4  opposition brief.  He seeks "inquiries into exactly what TPMG and

5  its representatives believed the wrongful-termination settlement

6  addressed, what was said during negotiations, and the like."  Opp'n

7  at 23.  Dr. Gonda has equal access as Defendants to "what was said

8  during negotiations," because he was there.  Moreover, Dr. Gonda

9  argues repeatedly that the LTD claim was never mentioned during the

10 wrongful-termination settlement negotiations.  Id. at 5, 21.  So it

11 is difficult to understand how discovery into what was said during

12 the negotiations could provide Dr. Gonda with evidence essential to

13 his opposition.  Regarding what TPMG and its representatives

14 believed the Settlement Agreement addressed, Dr. Gonda has offered

15 no basis for his belief that Defendants' beliefs contain facts

16 essential to his opposition.  Indeed, to defeat Defendants' motion

17 for summary judgment, Dr. Gonda must show that a genuine issue of

18 material fact exists as to the meaning of the Settlement Agreement.

19 That requires a showing of facts supporting a reasonable

20 interpretation of the Settlement Agreement that permits Dr. Gonda's

21 claims.

22     But Dr. Gonda has not offered any such interpretation of the

23 language of the Settlement Agreement.  Given the clear and broad

24 language of the release contained in the Settlement Agreement, it

25 is difficult to envision any evidence Dr. Gonda might find that is

26 relevant to prove a meaning to which the Settlement Agreement is

27 reasonably susceptible.  Nor has Dr. Gonda specified any facts that

28 might exist to support such an interpretation, nor any basis for

24

**United States District Court**
For the Northern District of California

1  believing they exist.  Thus Dr. Gonda has failed to show that the

2  facts he seeks, if they exist, would prevent summary judgment.

3  Because Dr. Gonda has not complied with the requirements of Rule

4  56(d), and because the Court can find no basis for believing that

5  Dr. Gonda's requested discovery might reveal facts essential to his

6  opposition, the Court deems it appropriate to deny Dr. Gonda's Rule

7  56(d) request and rule on the motion for summary judgment.[5]

8      **F.   Other Claims**

9       In addition to his claim for ERISA benefits, Dr. Gonda brings

10  claims for breach of fiduciary duty and statutory penalties.  ECF

11  No. 1 ("Compl.") ¶¶ 12-16.  Dr. Gonda's complaint was filed on

12  March 22, 2011, and he released all claims he held against

13  Defendants in November 2011.  As a result, and for the reasons

14  described previously, the Settlement Agreement waived these claims

15  as well.

16  ///

17  ///

18  ───────────────

19  [5] The Court notes that its prior holding that any discovery into
    the negotiations of the Settlement Agreement would necessarily be
20  inadmissible was in error.  See ECF No. 101, at 6.  California law
    requires the Court to consider proffered extrinsic evidence before
21  making a determination that a contract is not reasonably
    susceptible to a certain interpretation.  See Pac. Gas & Elec., 69
22  Cal. 2d 33 at 39-40.  However, the Court still finds that it need
    not await additional discovery for two reasons.  First, Dr. Gonda
23  has not complied with the Rule 56(d) requirements.  Second, Dr.
    Gonda has not proposed an interpretation of the language Settlement
24  Agreement that permits his claims.  Had Dr. Gonda submitted the
    requisite declaration or affidavit and proposed an interpretation
25  of the Settlement Agreement, additional discovery might have been
    warranted prior to this ruling (pending the outcome of Defendants'
26  motion for a protective order).  Nor does this error affect the
    outcome of the motion for leave to file a motion for
27  reconsideration.  The Court determined the limited additional
    discovery potentially warranted on this issue, if allowed, would
28  not unduly prejudice Dr. Gonda.  See ECF No. 101 at 6-7.

**V.  <u>CONCLUSION</u>**

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED with respect to all of plaintiff Thomas A. Gonda, Jr.'s claims against defendants The Permanente Medical Group, Inc. and The Permanente Medical Group, Inc. Long Term Disability Plan for Physicians.


IT IS SO ORDERED.


Dated: February 17, 2015



UNITED STATES DISTRICT JUDGE